# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

AUGUSTUS H. EVANS,                      :
                                        :
              Petitioner,               :
                                        :
        v.                              :        Civ. Act. No. 10-92-LPS
                                        :
PERRY PHELPS, Warden, and JOSEPH        :
R. BIDEN, III, Attorney General         :
of the State of Delaware,               :
                                        :
              Respondents.              :

--------------------

Augustus H. Evans. *Pro se* Petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

--------------------

## **MEMORANDUM OPINION**

April 2, 2012
Wilmington, Delaware

**STARK, U.S. District Judge**:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Augustus H. Evans ("Petitioner"). (D.I. 1) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.   BACKGROUND

As set forth by the Delaware Supreme Court, the facts leading to Petitioner's convictions are as follows:

> The evidence presented at trial fairly established that within a ten to twelve hour period, *i.e.*, from Saturday evening, September 16, 2006 through Sunday morning, September 17, 2006, [Petitioner] was involved in two gun incidents. The first incident occurred Saturday night in Seaford, Delaware, when [Petitioner] fired three shots at a rival drug dealer, William Witherspoon, hitting Witherspoon once in the left thigh. The second incident occurred Sunday morning in Laurel, Delaware, when [Petitioner] pointed a gun at Officer Charles Campbell of the Laurel Police Department.
>
> [Petitioner] was arrested on September 17, 2006, for the Laurel incident. Two days later, while in custody pursuant to the Laurel arrest, [Petitioner] was interviewed by Seaford Police Lieutenant Richard Jamison about the Seaford incident. During that videotaped interview, which was played for the jury at trial, [Petitioner] essentially admitted to shooting Witherspoon.

*Evans v. State*, 968 A.2d 491 (Table), 2009 WL 367728, at *2-3 (Del. Mar. 16, 2009). Petitioner was charged by indictment with first degree attempted robbery, first degree assault, second degree assault, first degree reckless endangering, aggravated menacing, resisting arrest, offensive touching, disorderly conduct, terroristic threatening, and eight related weapons charges. (D.I. 37 at 2) In January 2007, the Superior Court granted Petitioner's motion to proceed *pro se*. The

1

Superior Court appointed a public defender as stand-by counsel in June 2007, and the jury trial commenced in mid July, 2007. At the end of the jury trial, Petitioner moved for judgment of acquittal on all charges. The trial court granted his motion with respect to the terroristic threatening charge. Thereafter, the jury found Petitioner guilty of second degree assault, aggravated menacing, resisting arrest, and two counts of possession of a deadly weapon during the commission of a felony ("PDWDCF"), but found him not guilty of first degree attempted robbery and one of the weapons offenses. The remaining charges were *nolle prossed*. (D.I. 49, Del. Super. Ct. Crim. Dckt.)

The Superior Court sentenced Petitioner as an habitual offender to seventy-nine years of incarceration at Level V, suspended after seventy-two years for a period of probation. *See id.* Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentences. *See generally Evans*, 2009 WL 367728.

In June, 2009, Petitioner filed in the Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See State v. Evans*, 2009 WL 2219275 (Del Super. Ct. July 6, 2009); *Evans v. State*, 985 A.2d 390 (Table), 2009 WL 3656085 (Del. Dec. 16, 2009).

Petitioner timely filed the instant Petition. (D.I. 2) The State filed an Answer, asserting that the Petition should be denied in its entirety. (D.I. 37)

## II.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

2

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford,* 538 U.S. at 206.

## B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as recently explained by the Supreme Court, "it may be presumed that the state

---

[1]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

If the state's highest court has not adjudicated a federal habeas claim on the merits, but the claim is exhausted and the merits are properly before the federal court on habeas review, then the federal court must review the claim *de novo*. *See Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011) (citing *Porter v. McCollum*, __ U.S. __, 130 S.Ct. 447 (Jan. 19, 2011)). *De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (O'Connor, J., concurring).

Finally, whether reviewing a habeas claim *de novo* or under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

The Petition asserts five grounds for relief:[2] (1) Petitioner's stand-by counsel rendered ineffective assistance; (2) the trial court violated *Franks v. Delaware*, 438 U.S. 154 (1978), by

---

[2]The Petition contains repetitive claims. Therefore, in an effort to promote judicial efficiency, the Court has combined claims one and eight of the Petition to form Claim One, and Claims three, four, and five have been combined to form Claim Three.

denying Petitioner's request for an evidentiary hearing to determine the veracity of the probable cause affidavit for his arrest warrant; (3) the trial court violated Petitioner's Fourth Amendment rights by denying several pre-trial motions; (4) Petitioner's confession to the Seaford incident was involuntary because the police told him that the interview was not being recorded; and (5) Witherspoon's out-of-court identification of him was unreliable.

Petitioner presented these claims to the Delaware Supreme Court on direct appeal and/or on post-conviction appeal. Therefore, Petitioner has exhausted state remedies.

The State asserts that Claims One, Two, Four, and Five do not warrant relief under § 2254(d), and that Claim Three does not present an issue cognizable on federal habeas review. The Court will review Petitioner's Claims *seriatim*.

### A. Claim One

Petitioner contends that stand-by counsel provided ineffective assistance because she was not present during certain "critical stages" of the prosecution. The Delaware Supreme Court denied this claim on post-conviction appeal, holding that Petitioner could not claim ineffective assistance of standby counsel because Petitioner voluntarily waived his right to representation by counsel during his trial and on direct appeal. Given the Delaware Supreme Court's adjudication of Petitioner's ineffective assistance of counsel argument on the merits, the Court must review Claim One under the deferential standard of § 2254(d)(1).

It is well-settled that a criminal defendant has a Sixth Amendment right to represent himself. *See Faretta v. California*, 422 U.S. 806, 819 (1975). Although it is advisable for a court to appoint standby counsel when a defendant voluntarily and knowingly asserts his right to

5

self-representation,[3] there is no constitutional right to the appointment of standby counsel or a right to "hybrid representation" by a *pro se* defendant and standby counsel together. *See McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). Even when stand-by counsel is appointed, "a defendant does not have a constitutional right to choreograph special appearances by counsel while otherwise representing his or her self." *Thomas v. Carroll*, 581 F.3d 118, 125 (3d Cir. 2009).

Here, Petitioner does not contend that the Delaware state courts erred in granting his request to represent himself. Rather, he contends that stand-by counsel did not fulfill her role as "co-counsel" because she failed to: (1) assist him in challenging "the damning evidence against him;" (2) challenge the veracity of the sworn affidavit of probable cause; and (3) challenge the illegal detention in the Seaford case. (D.I. 2 at 82-84) However, as noted above, there is no constitutional right to have stand-by counsel act as co-counsel in the manner Petitioner envisions. Where there is no constitutional right to counsel, there can be no deprivation of effective assistance. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also Abbott v. Gigliotti*, 2010 WL 411830, at *4 (W.D. Pa. Jan. 28, 2010) (collecting cases). Therefore, the Delaware Supreme Court's decision is neither contrary to, nor an unreasonable application of, Supreme Court precedent and the Court will deny Claim One.

**B.    Claim Two**

During the pre-trial stages of his criminal proceeding, Petitioner filed a motion requesting a *Franks* hearing to determine the veracity of statements made by Laurel Police Officer Charles

---

[3]Notably, Petitioner does not challenge the validity of his waiver of representation by counsel.

Campbell in the affidavit of probable cause for the arrest warrant, as well as the veracity of an eyewitness account of the Laurel offense that was included in the affidavit. The trial court denied the motion. Now, in Claim Two, Petitioner contends that the trial court's failure to conduct a *Franks* hearing amounted to a denial of his rights under the Fourth and Fourteenth Amendments. Petitioner asserts that he was entitled to a *Franks* hearing because the police never located the gun he used to threaten Officer Campbell and because the witness who told police that she had seen Petitioner point the gun at Officer Campbell later recanted.

Petitioner presented this same argument to the Delaware Supreme Court on direct appeal. Treating the claim as a challenge to the sufficiency of the evidence supporting Petitioner's convictions, the Delaware Supreme Court rejected Petitioner's contentions and affirmed the trial court's decision. In these circumstances, the Court will review the instant claim *de novo*.

As an initial matter, given the manner in which Petitioner has presented Claim Two here, the Court construes the Claim as alleging three possible arguments: (1) the trial court violated his Fourth and Fourteenth Amendment rights by refusing to hold a *Franks* evidentiary hearing regarding the veracity of the Officer Campbell's statements in the **arrest warrant**; (2) the trial court violated his Fourth and Fourteenth Amendment rights by failing to dismiss the indictment or conduct a *Franks* evidentiary hearing with respect to the **indictment**, because the evidence presented to the grand jury was either insufficient or untrue; and (3) the trial court violated his Fourth Amendment rights by failing to exclude from **evidence** Officer Campbell's statements.[4]

---

[4]The Court construes Claim Two as asserting these three possible arguments after viewing the Claim in conjunction with Petitioner's numerous pre-trial motions and the discussion he had with the trial court during the June 19, 2007 hearing.

In *Franks*, the Supreme Court held that the Fourth Amendment requires an evidentiary

hearing to examine the veracity of factual statements included in an affidavit of probable cause

supporting a **search warrant** if the defendant "makes a substantial preliminary showing that a

false statement knowingly and intentionally, or with reckless disregard for the truth, was included

by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the

finding of probable cause." 438 U.S. at 155-56 (emphasis added). The *Franks* rule applies

"whether the alleged falsehood is an affirmative misrepresentation, or a material omission."

*Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *see also United States v. Yusuf*, 461

F.3d 374, 383 (3d Cir. 2006); *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000). In order to

satisfy *Franks*' threshold requirement of making a "substantial preliminary showing," the

defendant's "attack must be more than conclusory and must be supported by more than a mere

desire to cross-examine;" there must be allegations of deliberate falsehood or of reckless

disregard for the truth. *Franks*, 438 U.S. at 171. Importantly, "if the allegedly false statement is

set aside, [] and there remains sufficient evidence to establish probable cause, a *Franks* hearing is

not necessary." *Id*.

### 1.    Arrest Warrant

To the extent Petitioner is alleging that the trial court's failure to conduct an evidentiary

hearing to investigate the finding of probable cause for the **arrest warrant** violated his Fourth

and Fourteenth Amendment rights under *Franks*, the argument is unavailing. As the State

asserts, the applicability of *Franks* to Petitioner's situation is questionable, because *Franks*

involved a challenge to a search warrant. *See United States v. Riggins*, 319 F. App'x 180, 182

(3d Cir. Apr. 1, 2009) ("Because Riggins' conviction would not be overturned even if the District

Court erred in denying him a *Franks* hearing, we need not determine whether the denial of such a hearing was erroneous."); *but see United States v. Carter*, 756 F.2d 310, 313 (3d Cir. 1985) (applying reasoning of *Franks* to arrest warrants). Additionally, as explained by the Supreme Court in *United States v. Crews*, 445 U.S. 463, 474 (1980),

> An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. . . . The exclusionary principle of *Wong Sun* and *Silverthorne Lumber Co.* delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. Respondent is not himself a suppressible "fruit," and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.

Even if the instant argument requires further analysis under *Franks*, the record clearly reveals that Petitioner did not satisfy *Franks'* threshold requirement of making a "substantial preliminary showing" that Officer Campbell (the affiant) intentionally or recklessly included false information (or made a material omission) in the warrant affidavit. First, Officer Campbell did not "intentionally or recklessly" misstate that the police found a gun, nor did he attempt to hide the fact that the police did not recover a gun; rather, the affidavit of probable cause clearly asserts that no gun was recovered. Second, the failure to recover a gun does not demonstrate that Officer Campbell "knowingly and intentionally [falsely], or with reckless disregard for the truth," stated in the probable cause affidavit that Petitioner **pointed** a gun at him. Finally, the fact that the witness recanted her statement three days prior to trial does not demonstrate that either her initial statement to the police officer was false, or that Officer Campbell knowingly included a false witness statement in the probable cause affidavit. Given Petitioner's failure to satisfy the

threshold requirement for a *Franks* hearing, the Court concludes that the trial court did not violate Petitioner's Fourth and/or Fourteenth Amendment rights by denying his request for a *Franks* hearing.

### 2.   Indictment

To the extent Petitioner is arguing that his due process rights were violated because a *Franks* hearing would have revealed that the **grand jury indictment** was based on insufficient or incompetent evidence, the Court questions the applicability of *Franks* to the grand jury process. However, even if *Franks* applies in this context, the Court concludes that Petitioner's challenge lacks merit.[5] It is well-settled that an indictment that is valid on its face and returned by a legally constituted and unbiased grand jury "is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) (stating "a challenge to the reliability or competence of the evidence presented to the grand jury" will not be heard); *Costello v. United States*, 350 U.S. 359, 363-64 (1956) (stating "[i]t would run counter to the whole history of the grand jury institution" to permit indictment to be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury"). Moreover, in *United States v. Mechanik*, 475 U.S. 66, 70 (1986), the Supreme Court held that any error in the grand jury proceeding that may have affected the grand jury's decision to indict is rendered harmless by the petit jury's decision to return a guilty verdict.

Here, despite the absence of a gun and any corroboration of Officer Campbell's testimony

---

[5]Habeas review of Petitioner's state indictment is available because Petitioner asserts that the alleged deficiency in the grand jury indictment violated his right to due process. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000).

regarding Petitioner's actions during the Laurel incident, the jury found Petitioner guilty of all three Laurel offenses.[6] On direct appeal, the Delaware Supreme Court held that, when viewed in the light most favorable to the State, Officer Campbell's trial testimony provided ample evidence to support the charges on which Petitioner was convicted. Viewing these decisions in conjunction with the Court's earlier discussion of Petitioner's failure to satisfy *Franks'* "substantial preliminary showing" threshold, the Court simply cannot conclude that the evidence presented to the grand jury was inadequate for indictment purposes. Moreover, pursuant to *Mechanik*, the jury's guilty verdict cured any errors or deficiencies in the grand jury proceedings. Accordingly, the Court concludes that the trial court's "failure" to permit Petitioner to challenge the sufficiency of the evidence presented to the grand jury did not violate his due process rights.

Additionally, to the extent Petitioner is attempting to argue that the witness' recantation and the police department's failure to find a gun demonstrate that the indictment was defective because it was based on perjury (as opposed to being based on insufficient evidence), this argument, too, is unavailing. The primary function of the grand jury is not to determine the truth of the charges brought against a defendant but, rather, to determine if there is probable cause to believe that the charges are true such that the defendant should stand trial. *See Bracy v. United States*, 435 U.S. 1301, 1302 (1978). Although some circuits have held that a federal prosecutor's knowing use of perjured material testimony during the grand jury proceeding can constitute a due

---

[6]The three Laurel offenses included aggravated menacing, one count of possession of a firearm during the course of a felony ("PFDCF"), and resisting arrest. Petitioner only challenges the sufficiency of the evidence for aggravated menacing and one count of PFDCF. *See Evans*, 2009 WL 367728, at *2 & n.13.

11

process violation,[7] nothing in the record of this case suggests that the state prosecutor engaged in such conduct. Significantly, Petitioner does not allege that any false testimony was presented to the grand jury; the fact that the witness recanted her statement to the jury three days before trial does not demonstrate that the prosecutor knowingly presented false statements to the grand jury.

### 3. Suppression Motion

Finally, to the extent Petitioner is arguing that the trial court violated his Fourth Amendment rights by denying his pre-trial *Franks* motion because he intended for the motion to be considered as a motion to suppress or exclude Officer Campbell's statements, this claim is not cognizable on federal habeas review. In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See also Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). As a general rule, a petitioner has had a full and fair opportunity to litigate a Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Petillo v. New*

_____

[7]*See United States v. Manqual-Corchado*, 139 F.3d 34, 41 (1st Cir. 1998); *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990); *United States v. Bracy*, 566 F.2d 649, 654 (9th Cir. 1977); *United States v. Basurto*, 497 F.2d 781, 784 (9th Cir. 1974).

*Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). A petitioner may also have had a "full and fair" opportunity to litigate his Fourth Amendment claim whether or not the state courts properly or summarily resolved the claim. *See, e.g., Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002) ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."); *Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim – and, therefore, avoids the *Stone* bar – if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *See Marshall*, 307 F.3d at 82.

Here, the record demonstrates that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. In addition to the *Franks* motion, Petitioner filed a pre-trial motion to suppress Officer Campbell's statements under Delaware Superior Court Criminal Rule 41. The Superior Court denied both motions after conducting a hearing and concluding that Petitioner's true issue involved Officer Campbell's credibility, a matter more appropriately determined by the jury at trial. Petitioner also effectively raised the substantive Fourth Amendment issue in his direct appeal, in his Rule 61 proceeding, and in his post-conviction appeal. The facts that the Delaware Supreme Court interpreted his particular Fourth Amendment argument on direct appeal as challenging the sufficiency of the evidence, or that the Delaware state courts on post-conviction review found the argument to be procedurally barred, do not suggest that Petitioner did not receive a "full and fair litigation" of his Fourth Amendment issue. *See, e.g., Marshall*, 307 F.3d at 82 (whether or not state court incorrectly decided petitioner's Fourth Amendment claim is immaterial to full and fair opportunity analysis). Therefore, to the extent Claim Two asserts a Fourth Amendment challenge, the Court will deny it as barred by *Stone*.

In summary, the Court concludes that none of the three possible readings of Claim Two warrants habeas relief.

## C. Claim Three

As described by the Delaware Supreme Court,

> [Petitioner] was arrested on September 17, 2006, for the Laurel incident [i.e., pointing a gun at Officer Campbell]. Two days later, while in custody pursuant to the Laurel arrest, [Petitioner] was interviewed by Seaford Police Lieutenant Richard Jamison about the Seaford incident. During that videotaped interview, which was played for the jury at trial, [Petitioner] essentially admitted to shooting Witherspoon.

*Evans*, 2009 WL 367728, at *1. Petitioner filed pre-trial motions challenging the validity of his arrest and to have his statement to the police suppressed. The trial judge denied the motions on June 19, 2007, after conducting a hearing. On direct appeal, Petitioner argued that his Fourth Amendment rights were violated because he was never separately and formally arrested for the Seaford charges before he was indicted, and that his indictment was insufficient to cure that error. Petitioner also contended that his confession should have been suppressed because it was obtained after an illegal arrest.

The Delaware Supreme Court denied both arguments as meritless, explaining: (1) although Petitioner was never formally arrested on the Seaford charges, he was already in custody for the Laurel charges when he confessed to the Seaford shooting; (2) any deficiency in Petitioner's arrest on the Seaford charges was cured by the indictment, because the indictment constituted an independent finding of probable cause; and (3) Petitioner was not entitled to a preliminary hearing on the Seaford charges because he was properly charged by grand jury indictment.

14

Petitioner re-asserted the same Fourth Amendment claims in his Rule 61 motion and on post-conviction appeal. The Delaware state courts denied the arguments as procedurally barred.

Now, in Claim Three, Petitioner again contends that his Fourth Amendment rights were violated because he was never formally arrested on the Seaford charges and because the statement he made while in custody was rendered inadmissible by his illegal arrest. The Court, however, concludes that it is precluded from reviewing these Fourth Amendment arguments under the doctrine established in *Stone v. Powell*, which has already been discussed in conjunction with Count Two above. Petitioner was afforded a full and fair opportunity to litigate the instant Fourth Amendment claims in the Delaware state courts, and he took advantage of this opportunity by raising his arguments in his pre-trial motions, on direct appeal, in his Rule 61 motion, and on post-conviction appeal. Even if, as Petitioner contends, the Delaware state courts erroneously denied his Fourth Amendment claims, those dispositions do not nullify fact that he had a "full and fair opportunity to litigate" his claims. *See, e.g., Marshall*, 307 F.3d at 82 ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."). Accordingly, the Court will deny Claim Three.

### D. Claim Four

Claim Four presents two sub-arguments concerning the voluntariness and admissibility of the confession Petitioner gave during custodial interrogation. Notably, Petitioner does not deny that he was given a *Miranda* warning at the start of his interrogation, or that he agreed to speak with police after being so informed. Rather, in his first sub-argument, Petitioner asserts that he invoked his *Miranda* rights mid-confession by asking Lieutenant Jamison if the interrogation was being videotaped, and the trial court violated *Miranda* and his Fifth Amendment right against

15

self-incrimination by admitting the statements he made after that query. In his second sub-argument, Petitioner contends that his due process rights were violated by the admission of the confession, because Lieutenant Jamison's untruthful remark that the interrogation was not being videotaped amounted to police coercion and rendered Petitioner's confession involuntary.

Petitioner presented both sub-arguments to the Delaware Supreme Court on direct appeal. The Delaware Supreme Court denied Petitioner relief, holding that:

> [I]t is clear from the videotape of [Petitioner] with Lieutenant Jamison that [Petitioner] was advised of his *Miranda* rights, and that [Petitioner] waived those rights knowingly, intelligently and voluntarily. Moreover, we agree with the Superior Court that [Petitioner's] inquiry of Lieutenant Jamison mid-interview as to whether the interrogation was being videotaped was not, as [Petitioner] argues, an invocation of his *Miranda* rights.

*Evans*, 2009 WL 367728, at *3. This excerpt suggests that the Delaware Supreme Court only considered Petitioner's first sub-argument regarding the alleged invocation of his *Miranda* rights mid-confession without expressly addressing Petitioner's second sub-argument that the statement constituted police coercion rendering his confession involuntary. In these circumstances, the Court concludes that it must review the Delaware Supreme Court's decision regarding the alleged invocation of Petitioner's *Miranda* rights under § 2254(d), whereas Petitioner's argument regarding the alleged police coercion/due process violation must be reviewed *de novo*.[8]

With respect to Petitioner's contention that he invoked his *Miranda* rights mid-confession, it is well-settled that a suspect wishing to invoke his *Miranda* right to counsel or his *Miranda* right to remain silent must do so unambiguously. *See Davis v. United States*, 512 U.S.

---

[8]If, alternatively, the Delaware Supreme Court's decision were viewed as an adjudication of Petitioner's argument regarding police coercion, Petitioner would still not be entitled to relief, as Petitioner cannot satisfy the more deferential standard of review of § 2254(d)(1).

452, 459 (1994) ("But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect **might** be invoking the right to counsel, our precedents do not require the cessation of questioning."); *see also Berghuis v. Thompkins*, 130 S.Ct. 2250, 2259-60 (2010) (extending *Davis* requirement of unambiguous invocation to *Miranda* right to remain silent). A request for counsel is unambiguous when the defendant has articulated his "desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. A request to remain silent is unambiguous when the defendant states that he wants to remain silent or that he does not want to talk with the police. *See Berghuis*, 130 S.Ct. at 2260.

Here, Petitioner asked Lieutenant Jamison "Is this being recorded?" (D.I. 49, *Evans v. State*, No. 471, 2007, Appellant's App. #1 at 27) Lieutenant Jamison responded, "No. I will get you to write whatever you confess to." *Id*. Nothing in this exchange indicates an unambiguous request on Petitioner's part for counsel or an unambiguous invocation of his right to remain silent. Therefore, the Court concludes that the Delaware Supreme Court's denial of Petitioner's first sub-argument was based on a reasonable determination of facts, and was neither contrary to, nor an unreasonable application of, clearly established Federal law.

Petitioner's next sub-argument, that Lieutenant Jamison's statement constituted coercive police activity rendering his confession involuntary, fares no better. The voluntariness of a defendant's confession is determined by examining the totality of the circumstances, including any police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental health. *See Dickerson v. United*

*States*, 530 U.S. 428, 434 (2000); *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002). The crucial factor, however, is whether there was coercive police activity which overbore the defendant's will or impaired his self-determination. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Although there is no precise definition of "coercive police activity," the Supreme Court has identified the following examples as constituting such: interrogating the defendant for four hours while incapacitated and sedated in intensive care unit; interrogating a medicated defendant for over eighteen hours without food or sleep; holding a gun to the head of a wounded defendant to extract a confession; interrogating a defendant for sixteen days in a closed cell without windows, limited food, and coercive tactics; and holding a defendant for four days with inadequate food and medical attention. *See id.* at 164 n.1. The Supreme Court has also noted that "coercion can be mental as well as physical. . . . Subtle pressures may be as telling as coarse and vulgar ones. The question is whether the accused was deprived of his free choice to admit, to deny, or to refuse to answer." *Garrity v. State of N.J.*, 385 U.S. 493, 496 (1967) (internal citations omitted); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (stating test for determining voluntariness of confession is whether, in light of all surrounding circumstances, defendant's will was overborne).

The Supreme Court has noted a distinction between police trickery as a means of coercion and police trickery as mere strategic deception; "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). In other words, a law-enforcement agent may use some psychological tactics or even actively mislead a defendant in order to obtain a confession, provided that a rational decision remains possible. *See*

*Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (stating police misrepresentation that co-defendant had confessed did not render otherwise voluntary confession inadmissible). Significantly, there is no Supreme Court case holding that a law enforcement agent's act of covertly videotaping a defendant's confession while in police custody violates the defendant's constitutional rights, or that misleading the defendant about such videotaping violates the defendant's constitutional rights.[9] *See Lanza v. New York*, 370 U.S. 139, 143 (1962) (noting Constitution does not prohibit recording of conversations in prison or police station, as people being detained by police or being held in custody do not have reasonable expectation of privacy with regard to statements made to police officer); *Lester v. Wilson*, 363 F.2d 824, 826 (9th Cir. 1966) ("[P]olice secrecy and deception in obtaining a tape recording of incriminating statements, unassociated with a right to counsel problem or other circumstance which would render such statements inadmissible, do not present a constitutional violation."); *Woods v. McDonough*, 2007 WL 1017666, at *9 (M.D. Fla. Mar. 30, 2007) (stating voluntariness of interrogation covertly recorded by police does not turn entirely on whether police made any promises in that regard; rather, voluntariness turns on whether, in light of totality of circumstances, will of defendant was overborne). Rather, the effect of a misrepresentation told to the detainee must be analyzed in the context of all the circumstances of the interrogation. *See Miller v. Fenton*, 796 F.2d 598, 607 (3d Cir. 1986).

Here, having already been advised of his *Miranda* rights, Petitioner was aware that any

---

[9]The issue as to whether a defendant's constitutional rights are violated when the police "secretly" videotape a suspect's custodial confession and/or interrogation is distinct from the issue as to whether such videotaping violates any statutory rights to privacy. Delaware's wiretapping statute permits police officers in the State of Delaware to record their custodial interrogations of suspects and arrestees without such individuals' knowledge or consent. *See Jenkins v. State*, 962 A.2d 256 (Table), 2008 WL 4659805, at *2 (Del. Oct. 22, 2008); Del. Code Ann. tit. 11, §§ 2401 (10), (13) & 2402 (5)(b) & (e).

statements made would be used against him in a court of law. Consequently, the precise issue in this case is whether Lieutenant Jamison's response to Petitioner's inquiry so seriously changed the circumstances such that Petitioner's answers were no longer voluntary, or Petitioner was no longer making a knowing and intelligent relinquishment of his rights. *See Wyrick v. Fields*, 459 U.S. 42, 47 (1982). The Court answers "no" to both questions. First, Lieutenant Jamison's response that the interrogation was not being recorded did not directly contravene the *Miranda* warning Petitioner had already received, because Lieutenant Jamison also told Petitioner that the confession would be written down at a later time. *See United States v. Montoya*, 632 F. Supp. 1069, 1078 (D. Del. 1986) (stating Defendant's recorded statement was inadmissible at trial because police interrogator told Defendant that only investigating officers would have access to recording, in direct contravention of *Miranda* warnings given to Defendant earlier). Second, Petitioner's inquiry about whether any recording was taking place did not indicate that he wanted to end the interrogation if it was being recorded, or that he would only confess if it was not recorded. Significantly, after hearing Lieutenant Jamison's response, Petitioner did not say anything demonstrating a belief that he was speaking privately or off-the-record, nor did he indicate that his understanding of his rights was effected such that a new waiver was required. *See Wyrick*, 459 U.S. at 47 ("Disconnecting the polygraph equipment effectuated no significant change in the character of the interrogation.").

In short, nothing in the record demonstrates that Petitioner's will was overcome or that his capacity for self-determination was critically impaired as a result of Lieutenant Jamison's negative reply to Petitioner's question. Additionally, the Court notes that Petitioner does not allege any deprivation of food, sleep, or other physical needs that might have impaired his

capacity for self-determination, and nothing in the record indicates that there were factors

involving Petitioner's age, education, or mental condition suggesting that he did not understand

his *Miranda* rights or the consequences of waiving those rights. For all of these reasons, the

Court concludes that Lieutenant Jamison's misrepresentation about the videotaping of

Petitioner's interrogation, made midway through the interrogation, did not constitute the type of

coercive conduct required to render Petitioner's confession involuntary. Therefore, the trial court

did not violate Petitioner's due process rights by admitting Petitioner's confession as evidence

during his trial.

Accordingly, the Court will deny sub-argument one of Claim Four for failing to satisfy

§ 2254(d), and sub-argument two of Claim Four as substantively meritless.

### E.    Claim Five

As described by the Delaware Supreme Court during Petitioner's direct appeal,

> Lieutenant Jamison showed Witherspoon a mug shot book and
> asked him to pick out a photograph that he thought was a match for
> the person who shot him. Witherspoon chose a photograph. The
> photograph was not Petitioner.
>
> Jamison had doubts about Witherspoon's identification and
> continued his investigation. Jamison showed Witherspoon two
> photo arrays, the second of which included [Petitioner's]
> photograph. Witherspoon identified [Petitioner's] photograph
> from the second array. The record reflects that Witherspoon had
> chosen a photograph that was ten-years old.

*Evans*, 2009 WL 367728, at *1.[10] Petitioner filed a motion to suppress Witherspoon's out-of-

---

[10]During his trial and on direct appeal, Petitioner argued that Witherspoon's identification
should have been suppressed as unreliable because Petitioner's "photo was identified by name,
and Witherspoon had heard on the street that Petitioner was responsible for the shooting."
*Evans*, 2009 WL 367728, at *3. Petitioner also alleged that the police coerced Witherspoon into
identifying him. The Delaware Supreme Court denied these claims as factually unfounded.

court identification, which the trial court denied after determining that the identification procedure utilized by the police was not unduly suggestive. The Delaware Supreme Court affirmed that decision after rejecting as factually baseless Petitioner's assertion that the police coerced Witherspoon into changing his initial identification of someone else. The Delaware Supreme Court also held that Witherspoon's change of mind regarding his initial identification did not support an inference that the pretrial identification procedures were impermissibly suggestive.

In his final claim for relief, Petitioner asserts that Witherspoon's out-of-court identification of him as the shooter was unreliable because Witherspoon chose someone else's photograph before identifying Petitioner as the shooter. More specifically, Petitioner contends that the trial court violated his due process rights by admitting the unreliable identification as evidence during his trial. Given the Delaware Supreme Court's adjudication of this Claim Five, habeas relief will only be warranted if the Delaware Supreme Court's decision involved an unreasonable determination of facts based on the evidence presented at trial, or is contrary to, or an unreasonable application of, clearly established Federal law.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). The Supreme Court has established a two-part test to evaluate whether a defendant's due process rights were violated by the admission of an out-of-court identification ("*Biggers* test"). *See*

---

Petitioner has not raised either of these arguments in the instant proceeding.

22

*Perry v. New Hampshire*, __ U.S. __, 132 S.Ct. 716, 724 (2012) (citing *Stovall v. Denno*, 388 U.S. 293 (1967), *overruled in part on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987); *Neil v. Biggers*, 409 U.S. 188 (1972); and *Manson v. Brathwaite*, 432 U.S. 98 (1977)). The first step requires determining if the challenged pre-trial identification procedure was impermissibly suggestive. *See Simmons*, 390 U.S. at 384. Photographic identification procedures which heighten the risk of misidentification include those where: (1) only a single photograph is displayed to the witness; (2) the accused's photograph is somehow emphasized; or (3) a single individual is displayed more than once in a photographic array. *See id.* at 383. If the pretrial identification procedure is found to be impermissibly suggestive, then the second step of the *Biggers* test requires considering the totality of the circumstances to determine if the witness' identification was nonetheless reliable. *See Perry*, 132 S.Ct. at 724. The factors to be considered in this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* at 725 & n.5.

If, however, the first step of the *Biggers* test is not satisfied because the identification procedure was not unduly suggestive, then the defendant's due process rights are not violated by the admission of the out-of-court identification. Rather, the "reliability of properly admitted eyewitness identification, like the other parts of the prosecution's case, is a matter for the jury." *Foster v. California*, 394 U.S. 440, 443 n.2 (1969); *see also Perry*, 132 S.Ct. at 725-26. As the Supreme Court has explained, the "due process check for reliability . . . comes into play only after the defendant [has] established improper police conduct. The very purpose of the [due

process] check . . . [i]s to avoid depriving the jury of identification evidence that is reliable, **notwithstanding** improper police conduct." *Perry*, 132 S.Ct. at 726 (emphasis in original). In other words, the Due Process Clause only requires a judicial inquiry into the reliability of an out-of-court identification when the first prong of the *Biggers* test is met.

Petitioner's instant argument is that the Delaware state courts erred by not determining the reliability of Witherspoon's out-of-court identification. To the extent Petitioner is contending that the trial court was automatically required to consider the reliability of Witherspoon's out-of-court identification without regard to the first step of the *Biggers* test, the argument is foreclosed by the aforementioned precedent.

To the extent that Petitioner is contending that the Delaware Supreme Court's decision warrants relief because the trial court erroneously determined the first step of the *Biggers* test, this argument, too, is unavailing. An identification procedure is impermissibly suggestive when, "[i]n effect [it] sa[ys] to the witness 'This is the man.'" *Foster*, 394 U.S. at 443. In this case, Lieutenant Jamison initially showed Witherspoon a book of photographs known as a "beat book," which included a picture of Petitioner from 1998. Witherspoon picked out a photograph of someone else that he thought was a match for the person who shot him. Because the photograph chosen by Witherspoon was ten years old, Lieutenant Jamison had doubts about the identification and continued his investigation by showing Witherspoon two six-photo lineup arrays. Witherspoon then identified Petitioner from the second array. This procedure of showing Witherspoon two six-person photo arrays after showing him the beat book, where one array contained one picture of Petitioner and the other array did not contain any pictures of Petitioner, involved any of the three "heightened risk" scenarios identified by the Supreme Court in

*Simmons*. Therefore, the Delaware state courts reasonably concluded that the identification procedure did not impermissibly suggest that Petitioner was "the man."

Having determined that the police identification procedure was not unduly suggestive, the Delaware state courts were not constitutionally required to determine the reliability of Witherspoon's identification. Moreover, the fact that the jury chose to believe Witherspoon, despite the fact that he had identified someone else earlier, does not provide a basis for federal habeas relief.[11] *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Thus, the Court concludes that the Delaware Supreme Court's decision affirming the admission of Witherspoon's out-of-court identification did not involve an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, clearly established Federal law.

Accordingly, the Court will deny Claim Five for failing to satisfy the deferential standard of review contained in § 2254(d).

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's

---

[11]Significantly, Witherspoon testified at trial and identified Petitioner as his shooter for a second time. Petitioner cross-examined Witherspoon about this point in front of the jury and, during his closing argument, pursued his theory that the police coerced Witherspoon into changing his initial identification of another person as his shooter.

assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also*
*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the
Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the
Court declines to issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus
Pursuant To 28 U.S.C. § 2254 is **DENIED**. Consequently, the Court will deny all pending
motions as moot. (D.I. 88; D.I. 93; D.I. 96; D.I. 104; D.I. 105; D.I. 107; D.I. 110; D.I. 111) An
appropriate Order will be entered.